IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 17, 2013

**RANDY LYNN SHELBY v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40500128      John H. Gasaway, III, Judge**

**No. M2012-01060-CCA-R3-PC - Filed August 26, 2013**

Petitioner, Randy Lynn Shelby, timely filed a *pro se* petition for post-conviction relief which attacked his convictions for two counts of aggravated burglary and one court of especially aggravated kidnapping. After appointment of counsel and the filing of an amended petition, the trial court held an evidentiary hearing, at which only Petitioner and his trial counsel testified. The trial court dismissed the petition for post-conviction relief and Petitioner appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, Jr. and ROBERT W. WEDEMEYER, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Randy Lynn Shelby.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

After Petitioner was convicted in a jury trial, he appealed to this court, and the convictions and resulting effective sentence of sixty years were affirmed. *See State v. Randy Lynn Shelby*, No. M2006-02582-CCA-R3-CD, 2011 WL 795834 (Tenn. Crim. App., March 8, 2011) *perm. app. denied* (Tenn., June 2, 2011). In that opinion, this court summarized the facts leading to the convictions and the sentences imposed:

Viewed in the light most favorable to the State, the proof at trial showed that, in the early morning hours of November 28, 2004, the victim Baker ("Mr. Baker") was at his North Ford Street home, along with his wife, four children, and thirteen-year-old cousin. Mr. Baker was in his master bedroom playing on the computer, and his cousin was in the living room watching television. Sometime between 3:00 and 3:30 a.m., Mr. Baker turned his head and saw an intruder in his house (later identified as the Defendant). According to both Mr. Baker and his cousin, who also viewed the intruder, the Defendant was wearing a white shirt and blue jeans and had a red bandana over his face and a rag in his hand. Upon seeing the Defendant, Mr. Baker jumped up and grabbed a bowie knife he kept nearby and went after the man. The Defendant "bolted" from the residence, knocking over the kitchen table on his way out the back door. Mr. Baker then shut and locked the door and called the police. After examining the house, Mr. Baker noticed some "pry marks" around the back door. He was also later informed that the phone line and cable lines to his residence had been cut. Mr. Baker confirmed that he did not give the Defendant permission to be inside his home.

The Defendant then drove to the victim Schall's ("the victim") mobile home on Gip Manning Road. On that evening, the victim was alone; her husband and young child were not at home. The victim went to her bedroom around 12:30 or 1:00 a.m. that evening and began watching a movie. About thirty minutes or so later, she fell asleep. After hearing several loud noises, the victim, who was lying on her back, was awakened by a man in her room (later identified as the Defendant). According to the victim, the Defendant, who was wearing a red bandana and armed with a box-knife, jumped on top of her. She began screaming, saying "take anything you want, please don't hurt me. I have a son." The Defendant asked where her son was, but she refused to tell him.

The Defendant then placed a rag over the victim's nose and mouth, which rag she believed was soaked in ether. The victim testified that she fought with the Defendant for approximately eight to ten minutes, using her quilt to cover herself for protection. During the struggle, the victim was cut on her right thumb and chin. The Defendant then ordered the victim to turn over on her stomach. Believing she would be raped and killed, she acted like she was rolling over, but instead shoved the Defendant and fled from the residence.

After running outside, the victim hid behind her rental car, and it was about five minutes later when the Defendant emerged from inside the home. Believing it was her opportunity to escape, the victim began to run. The Defendant followed. She lost sight of the Defendant when she arrived at a neighbor's house. Jerry Mealer, the victim's neighbor, testified that, around 4:30 a.m. in the morning, he and his wife were awakened by the doorbell ringing and "pounding" on the front door. After hearing the terrified victim's cries for help, he let her come inside, and they called the police. At trial, the victim elaborated that her attacker was Caucasian and was wearing blue jeans, a hooded sweatshirt, and tennis shoes. The victim confirmed that she did not give the Defendant permission to be inside her residence.

Upon subsequent examination of the house, the victim believed the intruder came in through the window in her son's play room—the screen was ripped and the window was open. The back door also "looked like a screw driver tried jimmying up the opening of the door[.]" Nothing was missing from the victim's residence. It was determined that the phone lines to the victim's home had been severed. Forensic paint analysis later placed the Defendant's truck near the scene of the victim's mobile home. The Defendant also gave inculpatory statements admitting his involvement in these crimes.

Only the two aggravated burglary counts and the especially aggravated kidnapping count were submitted to the jury for their consideration. Following deliberations on these three counts, the jury found the Defendant guilty as charged. *See* Tenn. Code Ann. §§ 39-13-305 (especially aggravated kidnapping), -14-403 (aggravated burglary). Thereafter, the trial court conducted a sentencing hearing. The Defendant, a career offender, received concurrent terms of fifteen years for each aggravated burglary conviction and sixty years for the especially aggravated kidnapping conviction, resulting in an effective sentence of sixty years at 100%.

*Id*. at *1-2.

**Post-Conviction Issues Raised on Appeal**

In his brief on appeal, Petitioner asserts that his trial counsel rendered ineffective assistance of counsel in five specific instances:

(1)     Trial counsel failed to file a motion to suppress Petitioner's statements to police. Petitioner argues that the statements should have been suppressed because:

      (a)     He was unaware that officers were audio-recording the conversation he had with them while he was inside a police car after his initial detention;

      (b)     He was not advised of his *Miranda* rights prior to being interrogated; and

      (c)     Petitioner "told the police on the day he was arrested that he wanted to talk to an attorney."

(2)     Trial counsel failed to introduce Petitioner's mental health records at trial and at the suppression hearing.

(3)     Trial counsel failed to "challenge transcript of statement." This issue is actually an additional basis alleged by Petitioner for suppression of his second statement to police. Petitioner argues in his brief that "this statement was taken while the Petitioner was on suicide watch and should have been challenged or suppressed by trial counsel." Petitioner also states that the statement should have been suppressed because he was threatened by the officer that additional charges would be brought if Petitioner did not sign the statement.

(4)     Trial counsel failed to object to a district attorney staff member (a victim witness coordinator) during trial and in the presence of the jury, using scissors to cut out portions of Petitioner's statement to police.

(5)     Trial counsel failed to object to testimony by Tennessee Bureau of Investigation (TBI) forensic agents concerning blood found in Petitioner's truck and tire track found on a terra cotta pot.

**Trial Court's Order on Post-Conviction Petition**

In its order denying post-conviction relief, the trial court specifically found that, "The [c]ourt accredits [trial counsel's] testimony and does not find the petitioner to be a particularly credible witness." Thus, where the testimony of Petitioner conflicted with the testimony of trial counsel, the trial court accredited the testimony of trial counsel. As to each

alleged example of ineffective assistance of counsel raised on appeal, the trial court's order reflects the following findings.

(1) *Re*: evidence of mental health records

Petitioner failed to present at the post-conviction hearing the mental health records and he failed to present any expert testimony regarding his mental health. Trial counsel's testimony was credible that if trial counsel "believed a motion to suppress based on the petitioner's mental status would have been warranted, [trial counsel] would have filed such a motion."

(2) *Re*: failure to receive *Miranda* warnings

Proof at trial, consisting of testimony of the officers, and transcripts of the first statement show that prior to both statements, Petitioner was advised of his *Miranda* rights and no credible contrary evidence was offered at the post-conviction hearing.

(3) *Re*: the second statement should have been suppressed because it was taken while Petitioner was on "suicide watch" and because he was coerced into signing the statement.

The trial court found that Petitioner offered no credible evidence that he was on "suicide watch," that the statement was coerced, or that the statement was not accurate as to what Petitioner said to the officer.

(4) *Re*: failure of trial counsel to object to the victim witness coordinator using scissors to cut portions of Petitioner's statement, in the presence of the jury during the trial.

In its order, the trial court quoted from relevant portions of the trial transcript that trial counsel did object to the victim witness coordinator redacting the statement in the presence of the jury and the assistant district attorney's acquiescence in the objection. The trial court also found credible trial counsel's testimony that the victim witness coordinator did leave the courtroom.

(5) *Re*: forensic evidence concerning blood and tire tracks offered by TBI forensic scientists

The trial court found that a TBI forensic scientist testified that blood found inside Petitioner's truck and specifically on a sweatshirt, the steering wheel, and the truck bed did *not* come from the female victim, but instead came from an unknown male. The trial court concluded that Petitioner failed to show how he was prejudiced by this evidence. Indeed, we

note that Petitioner testified at the post-conviction hearing that the blood came from an officer who had a cut finger while searching Petitioner's truck.

As to the testimony from another TBI forensic scientist regarding tire tracks found on a flower pot, the trial court concluded that "a motion to exclude the testimony would not have been successful." This conclusion was based in part upon the trial court's findings that,

> Agent Poltorak's testimony at trial established that the tire tracks found on the terra cotta pot and the tires on the defendant's truck were "consistent with respect to size and tread design. However, there were no individual characteristics to say conclusively that these tires did make that design." [Trial counsel] testified at the evidentiary hearing that the fact that TBI testing on the flower pot tracks was ultimately inconclusive was "as far as [he] needed to go" regarding the issue [was] a reasoned conclusion. . . . the fact that the tire track testing was inconclusive related to the weight of Agent Poltorak's testimony, not its admissibility.

**Proof at Post-Conviction Hearing**

Our discussion of the facts developed at the post-conviction hearing and references to the trial court's ruling in denying post-conviction relief will be confined to the issues specifically raised on appeal.

At the post-conviction evidentiary hearing, Petitioner testified that he did not know his conversation in the patrol car was being taped, and that was why he believed trial counsel should have filed a motion to suppress the statement. Later in his testimony, in support of his assertion that the recording itself, and not just a transcript, should have been played at trial, Petitioner testified the jury would have heard him say to the officers, "why are you cutting this tape recorder on and off; . . . and I said well, why [are] you even taping this because you ain't read me my rights." Still later in his testimony, Petitioner said that while he was talking to the officers in the patrol car, he "raised up and looked" and saw the tape-recorder. Petitioner testified that at one point, in front of a camera with the officers, he stated that he wanted to talk to a lawyer, but the prosecution "covered that up." He claimed that the second time he was taken into custody by Montgomery County officers in Cheatham County, several witnesses, including an Ashland City police officer and Petitioner's co-workers, knew that Petitioner was not given his *Miranda* rights.

Petitioner testified that he was on medication "for hearing voices and different stuff" and that the prosecutor in his cases "didn't [want] that to be known." He also testified that a psychiatrist concluded that Petitioner "had memory lapse and blockage; you know couldn't really remember stuff very well." According to Petitioner, he went to "Clover Bottom" for

thirty days and saw the psychiatrist at "Centerstone." Petitioner asserted that trial counsel should have used the medical records in order to suppress his statements to the police.

Petitioner testified that while he was in custody on "suicide watch," an officer had him taken out of his jail cell, presented him with an already prepared inculpatory statement to sign, and threatened to initiate more criminal charges that Petitioner "did something" to a fourteen-year-old boy if Petitioner did not sign the statement. Petitioner also claimed that "juror four" made eye contact with him during the trial regarding the identity of the victim witness coordinator cutting paper at the state's counsel table, and they "shrugged" their shoulders to each other. Petitioner admitted that trial counsel asked the trial court to order the victim witness coordinator removed from court, but Petitioner claimed she never left the courtroom.

Finally, as to his complaints regarding the testimony of forensic scientists from the TBI, the evidence showed that the blood was from an unknown male. Petitioner testified that one of the officers searching his truck had a cut finger, and it was his blood in the truck, and that trial counsel "should have done more" to get that proof presented. Petitioner testified that trial counsel should have hired an expert witness to determine the identity of the tire tracks or what kind of vehicle made them, even though according to Petitioner, "the TBI specialist 100 percent said it wasn't my tire tracks."

Trial counsel testified that Petitioner's mental capacity was not an issue regarding the statements Petitioner made to the police. Trial counsel recalled that Petitioner, after a mental evaluation, was found to be competent to stand trial and "competent at the time of" the crimes. Trial counsel testified that the evidence showed Petitioner had waived his rights prior to giving both statements, and that there was nothing in the report from the mental health evaluation to form a basis to seek suppression of the statements. Trial counsel had no recollection of Petitioner being on suicide watch at the jail.

As to the district attorney staff member who was cutting something with scissors at the counsel table, trial counsel remembered asking the trial court to order that stopped, and the woman was ordered by the court to leave the courtroom, which she did. Trial counsel did not believe that the blood found in Petitioner's truck was relevant because it did not belong to the victim, and that the identity of the contributor of the blood was therefore not important to Petitioner's defense. Trial counsel thought that the evidence showing the tire track was not made by Petitioner's truck was "as far as [he] felt that [he] needed to go" on that issue.

**Analysis**

In order to be granted post-conviction relief, a petitioner must prove the factual allegations supporting relief by clear and convincing evidence at an evidentiary hearing.

Tenn. Code Ann. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). The trial court's factual findings in its ruling in a post-conviction proceeding "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Appellate review of legal issues, or of mixed questions of fact and law, such as in a claim of ineffective assistance of counsel, is de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008). A petitioner must satisfy both prongs of the two-prong test to prove ineffective assistance of counsel which is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). These prongs are (1) deficient performance of counsel, defined as "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and (2) prejudice to the defendant, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dellinger*, 279 S.W.3d at 293. If the petitioner fails to establish either one of the prongs, that is a sufficient basis to deny relief, and the other prong does not need to be addressed. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other actions, the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong. *See Pylant*, 263 S.W.3d at 869. In other words, it is incumbent upon a petitioner to prove that what he says trial counsel *should have done* would have had merit or produced admissible, relevant evidence.

Although Petitioner properly cited cases and statutory authority regarding the appropriate standard of review in post-conviction cases and regarding the requirements for a petitioner to be granted post-conviction relief, his brief fails to cite any legal authority whatsoever which would support the assertion that the claims he says trial counsel should have raised have any merit. In other words, his appellate brief fails to provide this court with any legal authority which supports the proposition that his statement to investigators should have been suppressed because Petitioner did not know the statement was being recorded; there is no legal authority cited that the mental health records would be admissible for whatever legal issues he claims were relevant; there is no legal authority cited in support of the argument that the second statement would be inadmissible because he was taken from suicide watch at the time the statement was given. Likewise, Petitioner cites no legal authority of why the staff member of the district attorney could not cut paper at counsel table during trial, or how or why his case at trial was prejudiced by a lack of evidence of blood *not* belonging to the victim and evidence of a tire track *not* matched to Defendant.

The evidence in this record does not preponderate against the factual findings of the trial court. The trial court's factual findings are therefore conclusive on appeal. *Jaco*, 120 S.W.3d at 820. Prejudice was not shown by petitioner regarding the complaints of trial

counsel's alleged deficient performance pertaining to suppression of the statement because Petitioner failed to present evidence of the statements at the post-conviction hearing and failed to present any credible evidence in support of his assertion that the statements should have been suppressed. Similarly, the mental health records were not presented at the hearing. Thus, no evidence of prejudice regarding failure to present proof at trial of mental health records was presented at the hearing. As to the allegations of ineffective assistance of trial counsel pertaining to the victim witness coordinator and the presentation of forensic evidence, the trial court clearly did not err in its conclusion that Petitioner had not met his burden of proof to show ineffective assistance of counsel.

In conclusion, Petitioner is not entitled to relief in this appeal. We therefore affirm the judgment of the trial court which denied post-conviction relief.

_____
THOMAS T. WOODALL, JUDGE